# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| NIKKY BRINKLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| LINCOLN NATIONAL | ) |
| LIFE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW Plaintiff, Nikki Brinkley, and for her claims and causes of action against

Defendant, Lincoln National Life Insurance Company, states as follows:

### PARTIES

1. Nikky Brinkley ("Brinkley") is a resident and citizen of the State of Missouri.

2. Defendant Lincoln National Life Insurance Company ("Lincoln") is an out-of-state

insurance company authorized to do business in the State of Missouri. The Commissioner

of the Missouri Department of Insurance is authorized to accept service of process on

behalf of Lincoln.

### JURISDICTION AND VENUE

3. Brinkley brings her claim pursuant to the Employee Retirement Income Security Act

("ERISA") and 29 U.S.C. § 1001 *et seq.*

4. This dispute is governed by a welfare benefits plan and its policy documents, as well as

applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

1

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

<u>INFORMATION REGARDING TRIAL</u>

8. No jury trial is allowed under ERISA law.

<u>STATEMENTS OF FACT</u>

9. Brinkley's occupation was a Personal Shopper for Wal-Mart.("Wal-Mart").

10. Brinkley's occupation required her to interact with Wal-Mart clients to help customers find the right products and make sure customers get the best deals. A Personal Shopper, among other tasks, processes orders placed by online shoppers communicates with customers via live chat, telephone calls, or emails in order to receive correct online orders, and advises customers on substitutes for unavailable or discontinued products.

11. The duties of Brinkley's occupation involved constant standing and walking, and frequent reaching, bending, twisting, lifting, and carrying.

12. Brinkley's occupation was situated at the light exertional level.

13. During Brinkley's employment, she became unable to perform the duties of her job due to a combination of physical conditions, including but not limited to – polyarticular psoriatic arthritis, polyarthralgia, bilateral osteoarthritis of the knees, osteoporosis of the spine, central hypothyroidism, pituitary insufficiency migraine headaches, and Barrett's

2

esophagitis. These conditions created restrictions and limitations that were incompatible with the ability to perform the material and substantial duties of her occupation.

14. During her employment, Brinkley's conditions deteriorated to the point where she was no longer able to work.

15. The long-term disability ("LTD") Plan constitutes employee welfare benefit plans as defined by 29 U.S.C. § 1002 (1).

16. The Plan offered disability benefits to qualifying Wal-Mart's employee Plan participants.

17. At all relevant times, Brinkley has been a participant and covered person under the terms of the Plans.

18. Lincoln is the administrator of the Plan.

19. Wal-Mart delegated or attempted to delegate the function of issuing LTD claim determinations to Lincoln.

20. Wal-Mart and Lincoln entered into an administrative services contract through which Wal-Mart paid Lincoln for acting as claims administrator.

21. The Plan and Policy articulate the conditions under which a Plan Participant is entitled to LTD benefits.

22. The LTD policy provides that an Insured Person is entitled to disability payments if that person becomes disabled. Disability is defined as follows:

"Disability" or "Disabled", with respect to Long Term Disability, means:

1. For persons other than truck drivers, pilots, co-pilots, and crewmembers of an aircraft:

    i.    that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

    ii.    thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

3

23. The policy defines "Any Occupations" as follows:

"Any Occupation" means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.

24. When Brinkley became unable to perform the duties of her job, she applied for benefits under the Plan.

25. Lincoln found that Brinkley was no longer able to perform the duties of her job and approved her claim.

26. Lincoln began paying monthly LTD benefits under the provisions of the Plan.

27. On or about November 18, 2021, Lincoln determined that Brinkley was no longer disabled under the policy.

28. Between April, 2020 and November 18, 2021, none of Brinkley's physical conditions had improved. In fact, all of her conditions had either remained the same or worsened.

29. On November 18, 2021, Brinkley received a denial letter from Lincoln stating Lincoln was terminating LTD benefits as of April 28, 2022, and that her claim would be closed effective April 29, 2022.

30. After Lincoln's denial, Brinkley requested her claim file from Lincoln.

31. On May 17, 2022, Brinkley submitted a written appeal of Lincoln's November 18, 2021, denial of her LTD claim.

32. On May 24, 2022, Brinkley received her claim file, consisting of 958 pages.

33. On October 3, 2022, Lincoln sent another denial letter stating that they maintained their decision to deny benefits starting April 28, 2022.

34. Both ERISA and the Policy itself require such denials to provide specific information, including:

    a. The specific reason(s) the claim was denied.

4

b. Specific reference to the Policy provision(s) on which the denial was based.

c. Any additional information required for the claim to be reconsidered, and the reason this information is necessary.

d. If the case of any claim for a disability benefit, identification of any internal rule, guideline or protocol relied on in making the claim decision, and an explanation of any medically related exclusion or limitation involved in the decision.

e. A statement regarding the right to appeal the decision, and an explanation of the appeal procedure, including a statement of the right to bring a civil action under Section 502(a) of ERISA if the appeal is denied.

35. Brinkley has at all relevant times met the definition of "Disability or Disabled" under the Plan, remains disabled, and is entitled to benefits.

36. Brinkley submitted substantial competent evidence to Lincoln that her physical conditions rendered her unable to perform the duties of any occupation on a full-time or competitive basis.

37. Lincoln owes Brinkley unpaid benefits from April 28, 2022.

38. Brinkley is entitled to future benefits until she reaches her Normal Retirement Age.

39. Brinkley has exhausted her administrative remedies.

<u>CAUSES OF ACTION</u>

COUNT I
29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF
BENEFITS

40. Brinkley realleges the preceding paragraphs as if fully set forth herein.

41. Brinkley is entitled to all unpaid and accrued LTD benefits, as Lincoln:

a. Made an unfavorable decision without substantial evidence;

5

b.  Failed to perform adequate vocational reviews;

c.  Failed to refer Brinkley's claim to qualified medical professionals;

d.  Failed to properly consider Brinkley's medical impairments and resulting limitations;

e.  Failed to respond to Brinkley's arguments appropriately and logically on appeal;

f.  Failed to provide evidence it relied upon when determining Brinkley's claim following proper request; and

g.  Issued an unfavorable decision that was arbitrary and capricious.

42.  Pursuant to 29 U.S.C. § 1132(a)(1)(b), Brinkley is entitled to an award of actual damages for losses suffered.

43.  Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's attorney's fees, costs, and prejudgment interest.

44.  Lincoln has not satisfied its obligation to pay Brinkley's LTD benefits.

45.  Lincoln's adverse benefit determination is subject to a *de novo* standard of review.

46.  WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Brinkley prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

COUNT II
29 C.F.R. § 2560.501-1 – PROCEDURAL AND STATUTORY NONCOMPLIANCE

47.  Brinkley realleges paragraphs 1-45 as if fully set forth herein.

48.  ERISA imposes on claims administrators the duty to establish and maintain reasonable claims procedures. 29 C.F.R. § 2560.503-1(b).

49.  29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(h) afford Brinkley the right to a full and fair review on appeal.

6

50. Lincoln, in violation of ERISA and its own procedures, deprived Brinkley of a full and fair opportunity to review and respond to "peer review" reviews it had obtained.

51. Brinkley was further harmed by Lincoln's failure to provide Brinkley with a description of the information necessary to perfect the claim and an explanation of why the information is necessary. 29 C.F.R. § 2560.503-1(g)(1).

52. These failures afford Brinkley the right to pursue any remedy under Section 502(a) of ERISA, including 29 U.S.C. § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

53. WHEREFORE, Lincoln's failure to administer Brinkley's claim in good faith is a breach of its fiduciary and procedural duties required by ERISA. Lincoln's determination is subject to a *de novo* standard of review.

## COUNT III
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

54. Brinkley realleges the preceding paragraphs as if fully set forth herein.

55. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

56. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

57. Lincoln, the Plan's designated claims administrator, is a fiduciary.

58. Brinkley participated in and benefitted from the Plan as previously indicated.

7

59. Lincoln's claims management practices are motivated by financial incentives in its administrative services agreement with Wal-Mart.

60. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Lincoln operates under an inherent conflict of interest.

61. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

62. Lincoln breached its fiduciary duty in:

   a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations;

   b. Repeatedly mischaracterizing Brinkley's occupation for its own interests;

   c. Relying on an implausible medical review to further its own interests;

   d. Refusing to utilize fully executed authorizations to attempt to obtain evidence relevant to Brinkley's claim for benefits;

   e. Relying upon the opinions of reviewers who have a financial interest in the outcome of Brinkley's claim; and

   f. Obtaining medical opinions from persons who do not possess the training, education or experience to render medical judgments;

63. Lincoln denied Brinkley's LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

64. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to

8

both Brinkley and the Plan's participants and beneficiaries generally.

65.   Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

66.   Lincoln's violations of regulations alone allow Brinkley the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

67.   Lincoln's violations of federal regulation also subject its decision to *de novo* review.

68.   WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Brinkley prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations; for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

**BURNETTDRISKILL, Attorneys**

By: /s/ Paul Taylor
Paul J. Taylor, Mo. #72159
Derrick A. Pearce, Mo. #42793
Kyle H. Sciolaro, Mo. #64568
103 W 26th Ave., Ste. 290
North Kansas City, MO  64116
P: 816.883.4142
F: 816.792.3634
ptaylor@burnettdriskill.com
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF

9